UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case Number:  05-CV-242 DRH |
| | ) | |
| v. | ) | CJRA Track: C |
| | ) | |
| APEX OIL COMPANY, INC., | ) | Hon. David R. Herndon |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON ITS SECOND CAUSE OF ACTION
AND MEMORANDUM IN SUPPORT THEREOF**

**I. INTRODUCTION**

The United States' Complaint in this matter sets forth two causes of action.  In its First Cause of Action, the United States requests injunctive relief pursuant to Section 7003(a) of the Solid Waste Disposal Act, commonly known as the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973(a), to abate an imminent and substantial endangerment to health or the environment posed by a large plume of petroleum-based products located beneath the Village of Hartford, Illinois.  The Second Cause of Action seeks a declaration under 28 U.S.C. § 2201, stating that a request for injunctive relief pursuant to RCRA Section 7003(a) is not precluded by the discharge of debts and claims provided by Bankruptcy Code Section 1141(d), 11 U.S.C. § 1141(d).

Pursuant to Federal Rule of Civil Procedure 56(c), the United States now moves for summary judgment on its Second Cause of Action, which is essentially a pure question of law as

to which there are no material facts in dispute. As a matter of law, a clean-up order issued under RCRA Section 7003(a) does not constitute a "claim" dischargeable in bankruptcy. Early resolution of this issue is likely to facilitate resolution of the matter as a whole. The United States' motion for partial summary judgment should be granted.

## II. STATEMENT OF UNDISPUTED FACTS

1. From September 29, 1967 until October 23, 1981, Clark Oil and Refining Corporation ("Clark Oil I") owned and operated a refinery (the "Hartford Refinery"), associated pipelines, and sewers adjacent to and within the Village of Hartford, Illinois. In 1981, Apex Holding Co., a subsidiary of the Apex Oil Company partnership, acquired Clark Oil I in a triangular merger. The Hartford Refinery, associated pipelines, and sewers became the property of the Apex Holding Co. subsidiary that survived the merger, which then took the name Clark Oil & Refining Corporation ("Clark Oil II"). Clark Oil II owned and operated the Hartford Refinery between October 23, 1981 and November 22, 1988. See Complaint ¶ 8; Answer ¶ 8.

2. On December 24, 1987, the Apex Oil Company partnership and certain affiliates and related companies -- including Apex Holding Co. and Clark Oil II -- filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri ("Bankruptcy Court"). This matter was designated as In re: Apex Oil Co., Case No. 87-03804 (Bankr. E.D. Mo.). See Complaint ¶ 33; Answer ¶ 33.

3. On August 16, 1990, the Bankruptcy Court entered an Amended Opinion and Order of Confirmation, which stated in part:

> 14. Pursuant to section 1141(d)(1) of the Bankruptcy Code and in accordance with section 8.2 of the Plan . . . the entry of this Order shall, on the Effective Date, discharge and release the

> Consolidated Debtors and their Estates . . . from any and all
> Claims, debts, and Liens that arose before the Confirmation Date .
> . . .

Order of Confirmation at 73.  See Complaint ¶ 34; Answer ¶ 34.

    4.    The defendant herein, Apex Oil Company, Inc. ("Apex Oil"), was incorporated on November 16, 1989 as a wholly-owned subsidiary of Apex Holding Co.  On December 12, 1989, Clark Oil II was merged into Apex Oil.  Apex Oil is the successor by merger to the entities that operated the Hartford Refinery, associated pipelines, and sewers from 1967 through November 1988.  See Complaint ¶ 9; Answer ¶ 9.

    5.    A plume of petroleum-based substances presently exists in or on top of the groundwater beneath the Village of Hartford, Illinois.  Preliminary investigation indicates that the plume includes a free phase (unmixed with water) liquid layer approximately 60 acres in size with an average thickness of one to three feet.  See Decl. of S. Faryan at Para. 5 (attached hereto as Ex. 1).  In a July 1, 2002 public health consultation, the Illinois Department of Public Health ("IDPH") concluded that residential vapor intrusions during the week of May 13, 2002 were a public health hazard in certain homes located in Hartford.  See Decl. of S. Faryan at Para. 6.  In a follow-up March 19, 2003 public health assessment, IDPH concluded that, based on historical evidence, similar vapor intrusions could return and, therefore, the site poses a continuing public health hazard.  See id.

    6.    On April 5, 2005, the United States filed the Complaint in this action, in which the United States seeks an order pursuant to RCRA Section 7003(a) compelling Apex Oil to "take all measures necessary to eliminate the imminent and substantial endangerment posed by the plume of petroleum-based substances under the Village of Hartford" or in the alternative an

order requiring "Apex Oil to cooperate and participate with other responsible parties in the investigation of the plume of petroleum-based substances and in the performance of measures that are required to address the conditions posed by the plume of petroleum-based substances that may present an imminent and substantial endangerment to health and the environment." Complaint at 12.

### III. ARGUMENT

#### A. Standard of Review for Summary Judgment.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The party seeking summary judgment has the burden of demonstrating the absence of any material factual issue that is genuinely in dispute. Felix v. Young, 536 F.2d 1126, 1134-35 (6th Cir. 1976). After the moving party has met its burden, the opposing party may not rely on allegations in its pleadings, the mere possibility that future discovery may uncover a factual dispute, or alternative sets of hypothetical facts; rather the non-moving party must present, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Van Diest Supply Co. v. Shelby County State Bank, 425 F.3d 437, 439 (7th Cir. 2005). A motion for partial summary judgment is an appropriate mechanism for resolving separate issues prior to trial. See Archer-Daniels-Midland Co. v. Phoenix Assurance Co. of N.Y., 936 F. Supp. 534, 537 (S.D. Ill. 1996).

### B.  Injunctive Relief Under RCRA Section 7003 is not Precluded by a Discharge of Debts in Bankruptcy.

In this action, the United States seeks injunctive relief under RCRA Section 7003(a) to require Apex Oil to clean up a plume of petroleum-related substances beneath the Village of Hartford, Illinois.[1]  Apex Oil's bankruptcy discharge does not absolve it of this ongoing environmental clean-up obligation.  The intersection of environmental and bankruptcy laws has been referred to as a "clash of the titans," as environmental laws require past polluters to remediate environmental harms and bankruptcy laws work to provide debtors with a fresh start.[2]  The Seventh Circuit, however, requires that environmental and bankruptcy law be harmonized and reconciled.  See In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 3 F.3d 200, 201 (7th Cir. 1993) ("The tension between these fundamental aspects of our national policy is profound.  The Supreme Court has indicated that, if possible, these two conflicting objectives should be reconciled.").[3]

In accord with the direction of the Seventh Circuit, bankruptcy law and RCRA Section 7003(a) can be harmonized based on the distinction in bankruptcy law between liability for

---

[1]  RCRA Section 7003(a) imposes liability on any person who has contributed to the past or present disposal of hazardous or solid wastes, where such waste may present an imminent and substantial endangerment to human health or the environment, and includes relief in the form of mandatory and/or prohibitory injunctions.  See 42 U.S.C. § 6973(a).

[2]  See Jill Losch, Bankruptcy v. Environmental Obligation: Clash of the Titans, 52 La. L. Rev. 137 (1991).

[3]  Accord In re Jensen, 995 F.2d 925, 928 (9th Cir. 1993) ("Notwithstanding what might be perceived to be diametrically opposed philosophies, the Supreme Court has indicated more than once that, if possible, these two conflicting objectives should be reconciled."); In re National Gypsum Co., 139 B.R. 397, 404 (N.D. Tex. 1992) ("It is not a question of which statute should be accorded primacy . . . but rather what interaction between the two statutes serves most faithfully the policy objectives embodied in the two separate enactments of Congress.").

equitable remedies and liability for monetary claims; whereas monetary claims are, generally speaking, discharged through the bankruptcy process, injunctive relief mostly survives the discharge provisions.  See In re Udell, 18 F.3d 403, 408 (7th Cir. 1994).  Thus, consistent with both statutes, the injunctive relief provided by RCRA Section 7003(a) to address imminent and substantial endangerments is not precluded by the Bankruptcy Code's discharge provision for "claims."[4]

### 1. Bankruptcy Discharge is Limited to "Claims."

In a chapter 11 bankruptcy, once the debtor's plan of reorganization is confirmed by the court, the debtor is "discharge[d] . . . from any debt that arose before the date of such confirmation," except as provided elsewhere in the Code.  11 U.S.C. § 1141(d)(1).  The Bankruptcy Code defines a "debt" as a "liability on a claim."  11 U.S.C. § 101(12).  The term "claim" is further defined in Section 101(5) as

(A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B)  right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable

---

[4] The matter before the Court differs from the more common issue raised by the intersection of bankruptcy law and environmental law, *i.e.* when does a "claim" for recovery of previously incurred clean-up costs arise.  In such cases, courts examine the facts to determine whether the claimant had knowledge of its claim prior to the bankruptcy bar date.  See e.g. In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 3 F.3d at 206.  Here, however, the issue is not when the "claim" arose, but rather whether injunctive relief under RCRA Section 7003(a) constitutes a "claim" at all, as that term is defined in Section 101(5) of the Bankruptcy Code.  Thus, for purposes of this motion, it is irrelevant whether the United States knew of Apex Oil's contribution to the plume of petroleum products beneath the Village of Hartford prior to Apex Oil seeking chapter 11 protection.  As discussed below, injunctive relief under RCRA does not constitute a "claim" dischargeable in bankruptcy and, therefore, no issue exists as to when such a "non-claim" arose.

>remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).  The Confirmation Order issued in In re Apex Oil Co. does not deviate from the Bankruptcy Code's discharge provision or definitions of "debt" or "claim."

The Seventh Circuit analyzed this definition at length in In re Udell, where the issue presented was whether an injunction to enforce a covenant not to compete constituted a "claim" dischargeable through bankruptcy.  See In re Udell, 18 F.3d at 406-08.  The court examined the legislative history of Section 101(5)(B), which distinguished between a right to an equitable remedy that can be satisfied by an alternative right to payment and one which cannot.[5]  Id. at 407.  The Seventh Circuit, therefore, concluded that a right to an equitable remedy for breach of performance only constitutes a dischargeable "claim" in bankruptcy where the breach also gives rise to the debtor having an alternative right of payment with respect to that equitable remedy, *i.e.* where the two remedies would be substitutes for one another.  Id. at 408.

---

[5]   The legislative history relied on by the Seventh Circuit contains an instructive example of the meaning of "claims" under Section 101(5)(B):

>In some States, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused; in that event, the creditor entitled to specific performance would have a "claim" for purposes of a proceeding [in bankruptcy] . . . .  On the other hand, rights to an equitable remedy for a breach of performance with respect to which such breach does not give rise to a right to payment are not "claims" and would therefore not be susceptible to discharge in bankruptcy.

In re Udell, 18 F.3d at 407 (citing 124 Cong. Rec. 32393 (1978) (remarks of Rep. Edwards)).

The court found that the two remedies available for the breach of the covenant not to compete were not substitutes for one another, but rather addressed separate remedial concerns. Id. at 409-10. Thus, as Mr. Udell could not escape his restrictive covenant not to compete by paying liquidated damages, the Seventh Circuit found that the he did not have an alternative right of payment and, therefore, the injunction at issue was not a dischargeable claim. Id. See also Gouveia v. Tazbir, 37 F.3d 295, 299-300 (7th Cir. 1994) (debtor cannot set aside restrictive land covenant in bankruptcy because breaching landowner has no option to force other landowner to accept money damages in lieu of equitable relief); In re Industrial Salvage, Inc., 196 B.R. 784, 787 (Bankr. S.D. Ill. 1996) (an equitable obligation constitutes a "claim" under Section 101(5)(B) only if money can be substituted for performance of such obligation). Thus, in the present matter the question is whether Apex Oil can choose to pay the United States money under RCRA 7003(a) as a substitute for participating in the Hartford cleanup? The answer is no.

### 2. Injunctive Relief Pursuant to RCRA Does Not Constitute a "Claim" Under the Bankruptcy Code.

RCRA Section 7003(a) does not provide a polluter with an option to pay money to the United States in lieu of complying with an order to clean up waste which may present an imminent and substantial endangerment to health or the environment. See 42 U.S.C. § 6973(a). Thus, as the debtor/polluter lacks an alternative remedy of payment, a RCRA 7003(a) cleanup order does not constitute a dischargeable "claim" in bankruptcy. See In re Udell, 18 F.3d at 406-08. A prior bankruptcy reorganization simply does not eliminate a polluter's obligation under RCRA to clean-up ongoing environmental contamination.

While no court has yet ruled on whether injunctive relief under RCRA Section 7003(a) constitutes a "claim" for bankruptcy purposes, numerous courts have held that cleanup orders

issued under environmental statutes are not dischargeable bankruptcy "claims."  See, e.g., AM Int'l, Inc. v. Datacard Corp., 106 F.3d 1342, 1348 (7th Cir. 1997) (injunctive relief under RCRA citizen suit provision not a dischargeable claim); In re Chateaugay Corp., 944 F.2d 997, 1008 (2d Cir. 1991) (CERCLA Section 106 order which to any extent ends or ameliorates ongoing pollution not a dischargeable claim); In re Torwico Elec., Inc., 8 F.3d 146, 151 (3d Cir. 1993) (injunctive relief under New Jersey environmental statute not a dischargeable claim); In re Damm, 2001 WL 34065016 at *2 (Bankr. C.D. Ill. 2001) (cleanup order issued pursuant to Illinois Environmental Protection Act not a dischargeable claim) (attached hereto as Ex. 2); In re Industrial Salvage, Inc., 196 B.R. at 787 (cleanup order issued pursuant to Illinois Environmental Protection Act not a dischargeable claim).

Although these cases addressed various environmental statutes, each utilized an analytical structure consistent with that set forth by the Seventh Circuit in Udell.[6]  First, what is the purpose of the equitable relief sought?  Second, does the statute provide the debtor/polluter with an alternative to pay money as a substitute for compliance with the equitable relief sought?  With regard to injunctions to clean-up ongoing or threatened environmental harm, courts have consistently answered the second question in the negative.[7]  As with the covenant not to compete

---

[6]   Indeed, the Seventh Circuit relied on the Chateaugay and Torwico decisions in crafting its analysis of whether equitable relief constitutes a dischargeable "claim."  See In re Udell, 18 F.3d at 407-08.

[7]   Certain courts have abbreviated this analysis by emphasizing whether an alternative right to payment exists under the relevant statute at all.  See, e.g., AM Int'l, 106 F.3d at 1348.  This approach reaches the same result as under Udell, because where the plaintiff has no right to accept payment, it is then axiomatic that the defendant cannot substitute payment for the equitable relief requested.  Where, however, the plaintiff has other potential rights that have not been exercised (such as a right to liquidated damages or penalties in a real estate transaction), Udell requires an analysis as to whether the underlying law permits the defendant to substitute

at issue in Udell, compliance with an environmental cleanup order is a form of specific performance which a polluter cannot choose to avoid through payment of monetary damages. Thus, environmental cleanup orders do not constitute "claims" dischargeable in bankruptcy.

In In re Chateaugay Corp., the Second Circuit analyzed whether a cleanup order issued pursuant to Section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9606, would be dischargeable through bankruptcy.  See In re Chateaugay, 944 F.2d at 1008.  The court declined to find that CERCLA Section 107, under which EPA could recover from responsible parties costs EPA incurred in conducting a cleanup, was a substitute for compliance with most cleanup orders under Section 106, stating that "EPA is entitled to seek payment if it elects to incur cleanup costs itself, but it has no authority to accept payment from a responsible party as an alternative to continued pollution."  Id.  The Second Circuit therefore concluded that:

> Since there is no option to accept payment in lieu of continued pollution, any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment and is for that reason not a "claim."

Id.  See also CMC Heartland Partners v. General Motors Corp., 1994 WL 498357 at *9 (N.D. Ill. 1994) (following Chateaugay in finding CERCLA Section 106 order unaffected by bankruptcy discharge) (attached hereto as Ex. 3).

The Second Circuit distinguished orders which ameliorate pollution from those which do "no more than impose an obligation entirely as an alternative to a payment right," finding that

---

payment of money for performance of its equitable obligation.

the latter would constitute a "claim."[8]  See In re Chateaugay, 944 F.2d at 1008.  The Chateaugay court recognized, however, "that most environmental injunctions will fall on the non-'claim' side of the line."  Id.  Here, the United States seeks an order requiring Apex Oil to ameliorate an ongoing hazard, the plume of petroleum-related products beneath the Village of Hartford.  Under RCRA, Apex Oil cannot choose to simply pay the United States and avoid addressing its environmental obligation and, therefore, such injunctive relief does not constitute a "claim" dischargeable in bankruptcy.[9]

The Third Circuit in In re Torwico Electronics, Inc., likewise found that the State of New Jersey's effort to enforce compliance with that state's environmental laws through an administrative cleanup order was not an attempt to collect on a monetary claim under the Bankruptcy Code.  See In re Torwico Elec., 8 F.3d at 151.  In Torwico, the polluter's cleanup

---

[8]   The Second Circuit referenced an injunction requiring the removal of wastes not currently causing pollution, where EPA could have itself removed the wastes and then sought reimbursement, as its example of where injunctive relief could constitute a "claim."  See In re Chateaugay, 944 F.2d at 1008

[9]   The fact that Apex Oil will have to spend money to comply with an injunction does not change this result.  Almost any enforcement action seeking injunctive relief, including the ones in Chateaugay, AM International, and Torwico, imposes costs on the defendant.  The liable party may incur costs by conducting the cleanup using its own resources, by paying a contractor, or by sharing in the costs of other responsible parties who are performing the cleanup.  See, e.g., Nashua Corp. v. Norton Co., 116 F. Supp.2d 330, 358-59 (N.D.N.Y. 2000) (approving injunctive relief requiring defendant to fund 90% of plaintiff's ongoing clean-up and maintain on-site presence to provide input).  The crucial point in each of these situations is that the payment goes to accomplish the cleanup -- to performance -- and that the debtor has no right to escape its obligation to perform by paying money to the government.  Such an equitable remedy is not converted into a claim merely because it requires the expenditure of money to comply therewith.  See In re Industrial Salvage, Inc., 196 B.R. 784, 789 (Bankr. S.D. Ill. 1996); In re Commonwealth Oil Ref. Co., 805 F.2d 1175, 1186-87 (5th Cir. 1986) (even though an injunctive action may require the debtor to expend funds, the action is not one to enforce a money judgment).

obligations were enforceable because New Jersey did not seek money, but rather sought "compliance with its laws through a cleanup of a current hazardous situation." Id. As in the present matter, in Torwico, the debtor did not presently own or operate the property in question. Rather, the debtor's liability for the cleanup of its formerly leased property was an ongoing regulatory obligation to deal with a continuing hazard which did not run with the land, but rather "runs with the waste." See id.

The polluter/debtor in Torwico was "responsible for remedying the problem regardless of where the waste might be," because the release of hazardous wastes was "threatened and ongoing." Id. Thus, in light of the ongoing nature of the environmental hazard, the cleanup order was not a "'repackaging [of] a forfeited claim for damages' for past conduct, but rather an attempt to prevent additional damage." Id., quoting In re CMC Heartland Partners, 966 F.2d 1143, 1147 (7th Cir. 1992). See also In re Damm, 2001 WL 34065016 at *2 (order requiring debtor's removal of wastes from his former property in Macoupin County required debtor "to ameliorate an ongoing hazard" and, therefore, was not a claim dischargeable in bankruptcy). As in Torwico, in the present action, the United States does not seek money from Apex Oil, but rather is attempting to utilize its regulatory powers under RCRA to prevent additional damage from the ongoing environmental hazard posed by the plume of contamination beneath the Village of Hartford.

Citing approvingly to Torwico, the Seventh Circuit in AM International, Inc. v. Datacard Corp. held that injunctive relief issued pursuant to RCRA's citizen suit provision, Section 7002(a)(1)(B), does not constitute a dischargeable "claim" in bankruptcy. See AM Int'l, Inc., 106 F.3d at 1348. In AM International, Datacard sought a mandatory injunction under RCRA

requiring AM International, Inc. ("AMI") to clean up soil and groundwater contamination at a site where AMI's historic operations had contributed to such contamination. See id. at 1345-46, 1348. AMI countered that its prior bankruptcy reorganization under chapter 11 had discharged Datacard's "claim." See id. at 1346.

The Seventh Circuit summarily dismissed AMI's bankruptcy argument, finding that the possibility of the debtor possessing an alternative right to pay money rather than complying with the mandatory injunction to clean up the property had been foreclosed by the Supreme Court's holding in Meghrig v. KFC Western, Inc., 516 U.S. 479 (1996), where the Court held that RCRA Section 7002(a)(1)(B) does not allow a party to clean up a site and then sue for response costs in lieu of seeking an injunction.[10]  See id. at 1348. The Seventh Circuit's conclusion that there was no alternative right to payment in AM International resonates even more strongly with regard to RCRA's federal enforcement provision at issue here, because, as noted above, Apex Oil has no option to pay money as a substitute for compliance with equitable relief necessary to protect human health and the environment.

Finally, in In re Industrial Salvage, Inc., the Bankruptcy Court for the Southern District of Illinois upheld the debtors' obligations to clean-up three Marion County landfills pursuant to

---

[10]  In concluding that costs for a past cleanup effort were not recoverable under RCRA Section 7002(a)(1)(B), the Supreme Court rejected the argument that such costs could be recovered as equitable restitution under that provision. See Meghrig, 516 U.S. at 484. While there are significant similarities in the language of RCRA Sections 7002(a)(1)(B) and 7003(a), historically, some courts have found that the United States could recover response costs under RCRA 7003 as a form of equitable restitution. See United States v. Conservation Chem. Co., 619 F. Supp. 162, 201 (W.D. Mo. 1985). To date, no court has ruled on whether the reasoning in Meghrig likewise applies to RCRA Section 7003(a), and this Court need not reach a conclusion on that issue to determine the present motion. As the Third Circuit noted, whether the government may have an "alternative means at its disposal to end the ongoing threat does not convert its statutory authority into a 'right to payment.'" In re Torwico, 8 F.3d at 151 n.6.

an order issued by the Illinois Pollution Control Board subsequent to debtors filing for relief under chapter 11 of the Bankruptcy Code. See In re Industrial Salvage, 196 B.R. at 789. Following confirmation of their plans of reorganization, the debtors filed a dischargeability action arguing -- as Apex Oil does in the present matter -- that the cleanup order imposed a monetary obligation that should be discharged as a "claim" pursuant to 11 U.S.C. § 1141 (d). Id. at 786-87. Bankruptcy Judge Myers, however, rejected debtors' arguments. The Bankruptcy Court found that the government had not taken any action to transform debtors' environmental clean-up obligations into a right of payment and that the relevant environmental provision did not provide the State with an option to do so. Id. at 788.[11] As in Industrial Salvage, here the United States solely seeks injunctive relief under RCRA Section 7003(a) to require the clean-up of another portion of Marion County, the Village of Hartford. Apex Oil's bankruptcy discharge does not absolve it of this ongoing environmental clean-up obligation.

### 3. Bankruptcy Proceedings Do Not Relieve Debtors of their Obligation to Comply with the Environmental Laws.

The Bankruptcy Code's distinction between purely equitable remedies and monetary remedies in its definition of "claim" has a parallel in the Code's differing treatment of monetary judgments and other relief under the police and regulatory power exception to the bankruptcy automatic stay. See 11 U.S.C. § 362(b)(4). The police and regulatory power exception to the

---

[11] The court also rejected the argument that financial assurance obligations included in the order at issue constituted an "alternative" to the requested injunctive relief, as the State arguably could have invoked such obligations to at least partially fund closure of the landfills. See In re Industrial Salvage, 196 B.R. at 788. No such financial assurance requirement exists or is sought in the present case and, as noted by the court, such a requirement would not impact the determination as to whether injunctive relief at issue constitutes a "claim." See id.

automatic stay expressly permits governmental units to enforce judgments unless they are "money judgments." Section 362(b)(4) provides that the stay does not apply to

> [A]n action or proceeding by a governmental unit . . . to enforce such governmental unit's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action to enforce such governmental unit's . . . police or regulatory power.

11 U.S.C. § 362(b)(4).

The United States is, thus, permitted to enforce injunctions to deal with threats to public health and safety under environmental laws during the pendency of the bankruptcy action. See, e.g., In re Commonwealth Oil Ref. Co., 805 F.2d 1175, 1184-86 (5th Cir. 1986); Penn Terra Ltd. v. Department of Envtl. Resources, 733 F.2d 267 (3d Cir. 1984). Notably, the express language of the police and regulatory exception applies to any police and regulatory actions against a debtor, whether or not involving property of the estate. See 11 U.S.C. § 362(b)(4).

Here, the United States seeks to utilize its regulatory power by requesting that this Court issue an injunction requiring Apex Oil to address an ongoing environmental hazard in the Village of Hartford. Just as the bankruptcy automatic stay provisions recognize the distinction between monetary and non-monetary judgments and would not prevent the United States from seeking or enforcing an injunction under RCRA 7003(a) during the pendency of the bankruptcy proceedings, this distinction is likewise present in the Code's definition of "claim" and, therefore, the United States should not be precluded from seeking such an injunction where a polluter has emerged from bankruptcy, but remains liable for a non-monetary remedy under the environmental laws.

## IV.  CONCLUSION

For the reasons stated above, the United States' Motion for Partial Summary Judgment on its Second Cause of Action should be granted.

                                        Respectfully submitted,

                                        SUE ELLEN WOOLDRIDGE
                                        Assistant Attorney General
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice

December 12, 2005                          /s Jeffrey A. Spector
                                        JEFFREY A. SPECTOR
                                        Trial Attorney
                                        Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611, Ben Franklin Station
                                        Washington, D.C.  20044-7611
                                        (202) 514-4432
                                        (202) 616-6584
                                        Jeffrey.Spector@usdoj.gov

                                        RONALD J. TENPAS
                                        United States Attorney
                                        Southern District of Illinois
                                        LIAM COONAN
                                        Assistant United States Attorney
                                        Southern District of Illinois
                                        Nine Executive Drive
                                        Fairview Heights, IL  62208

OF COUNSEL:

BRIAN BARWICK
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL  60604

**CERTIFICATE OF SERVICE**

      I, Jeffrey A. Spector, an attorney, hereby certify that on December 12, 2005 I electronically filed **UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF AND MEMORANDUM IN SUPPORT THEREOF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following. In accordance with the Notice of Manual Filing, Exhibit 1 to United States' Motion shall be served via first-class mail, postage prepaid, to:

>JAMES V. O'BRIEN
>LEWIS, RICE & FINGERSH, L.C.
>500 North Broadway
>Suite 2000
>St. Louis, MO 63102
>
>and
>
>WILLIAM J. KNAPP
>KNAPP, OHL & GREEN
>22 Ginger Creek Parkway
>Glen Carbon, IL 62034

                                                 /s Jeffrey A. Spector
                                                    Jeffrey A. Spector