IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**APEX OIL COMPANY, INC.**

**Defendant.**                                                            **No. 05-CV-242-DRH**

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

### I. <u>Introduction</u>

Before the Court is a motion submitted by the government seeking partial summary judgment on its second cause of action. (Doc. 18.) Specifically, the government moves for a declaration pursuant to **28 U.S.C. § 2201** that the injunctive relief it seeks in its first cause of action does not constitute a dischargeable "claim" under the Bankruptcy Code. (*Id.*)  Defendant Apex Oil Company ("Defendant") disagrees. (Doc. 32.) It maintains that the injunction the government requests does amount to a claim under the Code, and further that this claim was discharged in earlier bankruptcy proceedings. (*Id.*)  For the reasons below, the Court grants the government's motion.

### II. <u>Background</u>

Defendant is an successor company to corporate entities — both named Clark Oil and Refining Corporation — that owned and operated a refinery and

associated pipelines in Hartford, Illinois (the "refinery"). In December 1987, these and other affiliated entities filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code.[1] On August 16, 1990, the U.S. Bankruptcy Court for the Eastern District of Missouri entered an Order of Confirmation discharging the consolidated debtors and their estates from any and all claims, debts, and liens arising before the confirmation date.

Nearly fifteen years later, this suit followed. On April 5, 2005, the government sued Defendant, alleging that releases from the refinery pose an "imminent and substantial endangerment" to health or the environment. (Doc. 1.) The government seeks two things: injunctive relief pursuant to the Resource Conservation and Recovery Act ("RCRA"), **42 U.S.C. § 6973(a)** to abate the alleged endangerment, and a declaration under **28 U.S.C. § 2201** affirming that such relief was not discharged.[2] (*Id.*) The instant motion for partial summary judgment relates

---

[1] The current Defendant, Apex Oil, was not incorporated until November 16, 1989. Neither party contests, however, that all relevant predecessor entities effectively merged into Defendant on December 12, 1989.

[2] RCRA "establishes a comprehensive federal 'cradle-to-grave' program regulating the generation, transportation, storage, treatment, and disposal of hazardous waste." ***United States v. Bethlehem Steel Corp.*, 38 F.3d 862, 862 (7th Cir. 1994)**. Unlike the Comprehensive Environmental Response, Compensation and Recovery Act ("CERCLA"), **42 U.S.C. § 9601 et seq.**, "RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." ***Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)**. Instead, RCRA's primary purpose "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" ***Id.*** It accomplishes this via two provisions

only to the second, or declaratory-relief, cause of action.[3]

### III.  Analysis

#### A.  Summary Judgment Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; ***Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)** (citing ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**).  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment.  ***Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)** (citing ***Celotex*, 477 U.S. at 323**).  In reviewing a summary judgment motion, a court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant.  ***Regensburger v. China***

---

providing for litigation, one, **42 U.S.C. § 6973**, allowing for suits commenced by the Administrator of the Environmental Protection Agency ("EPA"), and another, **42 U.S.C. § 6972**, allowing for suits brought by private citizens.  Under either provision, the relevant party may sue to abate conduct presenting an "imminent and substantial endangerment to health or the environment."  **42 U.S.C. §§ 6972(a), 6973(a)**.

[3] As these facts make clear, this case requires the Court to consider the interface of environmental cleanup laws and the bankruptcy statutes.  This interface is "never tidy" and "somewhat grubby."  ***In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 3 F.3d 200, 201 (7th Cir. 1993)**.

*Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998)** (citing *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**).

### B. A "Claim" Under the Bankruptcy Code

With respect to the government's second cause of action, the issue is whether the injunctive relief sought by the government would amount to a "claim" discharged in the Chapter 11 proceedings participated in by Defendant's predecessors. Backing up a step, under the Bankruptcy Code, and to enable debtors to start fresh after a bankruptcy, "debts" are discharged in Chapter 11 proceedings. **11 U.S.C. § 727**. The Code defines a "debt" as "liability on a claim." **11 U.S.C. § 101(12)**. A "claim," in turn, is defined as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**11 U.S.C. § 101(5)**.

### C. Right to Payment

Relevant to the instant motion is the language in **11 U.S.C. § 101(5)(B)** above that a right to an equitable remedy for breach of performance constitutes a claim dischargeable in bankruptcy "if such breach gives rise to a right to payment." The government here seeks an equitable remedy for Defendant's alleged breach of a

Page 4 of 12

statute.[4] (Doc. 1.) Under **11 U.S.C. § 101(5)(B)**, then, in order to ascertain whether this equitable relief was in fact discharged, it must be determined whether the relief would give rise to a right to payment. Before this can be decided, however, it must first be determined whose "right to payment" matters, the government's or the breaching party's. If **11 U.S.C. § 101(5)(B)** refers to the government's right to payment, then the discharge question hinges on whether **42 U.S.C. § 6973(a)** allows the government to seek some form of monetary damages. If **11 U.S.C. § 101(5)(B)** refers to the breaching party's right to payment, in contrast, then the discharge question depends on whether **section 6973(a)** allows Defendant to pay in lieu of compliance with an injunction.

The cases strongly support the position that the "right to payment" in **U.S.C. § 101(5)(B)** is the government's. In ***Ohio v. Kovacs*, 469 U.S. 274 (1985)**, for example, it was the state of Ohio — not the party alleged to be in breach — whose ability to convert an injunction into a monetary sum was deemed relevant by the Supreme Court. ***Kovacs*, 469 U.S. at 278-79**. Likewise in ***AM Int'l v. Datacard Corp.*, 106 F.3d 1342, 1348 (7th Cir. 1997)**, the Seventh Circuit found that the discharge question turned squarely on whether the nonbreaching party could convert

---

[4] The notion that a statutory injunction pertaining to environmental contamination may be discharged in bankruptcy, it should be noted, was established in ***Ohio v. Kovacs*, 469 U.S. 274, 279 (1985)**. *See **id.*** ("There is no indication in the statute that a right to performance cannot be claimed unless it arises from a contractual agreement . . . . It makes little sense to assert that because the cleanup order was entered to remedy a statutory violation, it cannot likewise constitute a claim for bankruptcy purposes.").

the district court's order into a right to payment. *Id.* The same can be said about the ***In re Chateagay Corp.*, 944 F.2d 977 (2d Cir. 1991)** and ***In re Torwico Electronics, Inc.*, 8 F.3d 146 (3d Cir. 1993)** decisions. In those cases, it was the government, not the breaching party, whose ability to obtain monetary damages courts deemed significant. *See **In re Torwico*, 8 F.3d at 151** (finding, in determining whether an injunction was dischargable, that the relevant issue was whether the state has a right to payment); ***In re Chateagay*, 944 F.2d at 1008 n.2** ("[A]n order to clean up a site, to the extent that it imposes obligations distinct from any obligation to stop or ameliorate ongoing pollution, is a 'claim' if the *creditor obtaining the order* had the option . . . to do the cleanup work itself and sue for response costs, thereby converting the injunction into a monetary obligation." (emphasis added)); *see also **In re Industrial Salvage, Inc.*, 196 B.R. 784, 787 (Bankr. S.D. Ill. September 29, 1994)** (noting that a claim cannot be discharged under **11 U.S.C. § 101(5)(B)** if "*the government* has the option of cleaning up the pollution itself and seeking reimbursement from the debtor" (emphasis added)); 2 Alan N. Nesnick & Henry J. Sommer, Collier on Bankruptcy §101.05 (15th ed. rev. 2004) ("[W]hen *the state* neither seeks money nor has a right to payment, but only exercises its right to force a debtor to comply with the debtor's continuing obligation under state law to dispose of hazardous waste, the state's demand that the debtor remedy the hazard is not a claim of the state." (emphasis added)).

In opposing this position, the government relies on a lone case, ***In re***

*Udell*, **18 F.3d 403 (7th Cir. 1994)**, which it argues supports the claim that it is exclusively the breaching party's ability to pay that is relevant under **11 U.S.C. § 101(5)(B)**. That is not quite right. While the court there did cite an Indiana appellate decision in which a breaching party's right to pay was considered, *id.* **at 408-09**, and further noted, in analogizing to the holding in the state case, that "Udell [the breaching party] cannot escape the restrictive covenant by paying $25,000 in liquidated damages," *id.* **at 409**, the *Udell* court did not hold, as the government urges, that a nonbreaching party's ability to convert an injunction into a monetary remedy is irrelevant in considering whether that injunction gives rise to a claim under **11 U.S.C. § 101(5)(B)**. To the contrary; in addition to citing approvingly to several decisions in which it was the *nonbreaching* party's ability to convert the injunction that was key, *id.* **at 407-08**, the *Udell* court repeatedly framed its analysis in terms of the nonbreaching, not the breaching, party's rights. *See* *id.* **at 408, 409, 410** ("The former 'is a "claim" if *the creditor* obtaining the order had the option, which CERCLA confers, to do the cleanup work itself and sue for response costs, thereby converting the injunction into a monetary obligation.' The latter is not a claim because *the creditor* has 'no option to accept payment in lieu of continued pollution' — i.e., the injunction does not give rise to a right to payment. . . . We further find that Carpetland's [the nonbreaching party's] right to an injunction does not give rise in any other sense to the payment of liquidated damages." (citations omitted) (emphasis added)). At the very most, then, *Udell* stands for the proposition

that either a breaching party's right to pay or a nonbreaching party's right to payment can give rise to a claim under **11 U.S.C. § 101(5)(B)**. The Court finds the government's argument that only the breaching party's right to pay may be considered to be unfounded.

### D. Whether the Injunction That Would Issue Here Is Dischargeable

That issue decided, the question then becomes whether the government can convert an injunction issued pursuant to **42 U.S.C. § 6973(a)** into a right to payment.[5] On its face, that statute offers no explicit suggestion that a right to

---

[5] Consideration of this issue is necessary because, as the Supreme Court has found, a cleanup order — which the government's complaint can certainly be implied to seek (*see* Doc. 1, p. 12) — may constitute a claim in bankruptcy. ***Ohio v. Kovacs*, 469 U.S. 274, 279 (1985)**; *see also **Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)** ("Congress intended [in **11 U.S.C. § 101(5)(B)**] to adopt the broadest available definition of 'claim.'"); ***AM Int'l v. Datacard Corp.*, 106 F.3d 1342, 1348 (7th Cir. 1997)** ("Whether a cleanup order can be discharged in bankruptcy depends on whether the order can be converted into a monetary obligation."). The government's complaint, moreover, leaves open the prospect of pecuniary recovery. (*See* Doc. 1, p. 12 (seeking an order requiring Defendant to "cooperate and participate . . . in the performance of measures that are required to address the conditions posed by the plume of petroleum-based substances").)

It should be noted that the Court is aware of no recent court to address this precise issue. Prior to ***Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)**, discussed infra, however, some courts found that the government could sue for cleanup costs under **42 U.S.C. § 6973(a)**. *See **United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1383 (8th Cir. 1989)**; ***United States v. Conservation Chem. Co.*, 619 F. Supp. 162, 201 (W.D. Mo. 1985)**; *see also **United States v. Valentine*, 856 F. Supp. 627, 632 (D. Wyo. 1994)** (finding a right of contribution in **section 6973(a)**).

It should also be noted that neither party here attempts to argue that **42 U.S.C. § 6973(a)** somehow gives a breaching party the option of paying instead of complying with an injunction.

payment might be available. Rather, the only location within the statute where such a right could potentially be situated (and the place Defendant urges the Court to situate that right) is in italicized portion of the following sentence:

> Notwithstanding any other provision of this Act, upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to the health of the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal, to restrain such person from such handling, storage, treatment, transportation, or disposal, *to order such person to take such other action as may be necessary*, or both.

**42 U.S.C. § 6973(a)**.

In determining whether this language allows the government to obtain monetary relief, the Supreme Court's decision in ***Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)** is key. There, the Court considered a very similar issue, namely whether **42 U.S.C. § 6972(a)** — RCRA's citizen-suit provision and **42 U.S.C. § 6973(a)**'s close statutory cousin — allows a private party to obtain a monetary remedy. In finding to the contrary, the Court held that **section 6972(a)**'s "as may be necessary" language (which mirrors **section 6973(a)**'s wording) fails to contemplate the award of past cleanup costs or other monetary damages. *Meghrig*, **516 U.S. at 488**. In its words, given that **section 6972(a)** authorizes district courts "to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous

waste . . . , to order such person to take such other action as may be necessary, or both,"

> It is apparent . . . that RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts. Under a plain reading of this remedial scheme, a private citizen suing under § 6972(a)(1)(B) could seek a mandatory injunction, i.e., one that orders a responsible party to "take action" by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that "restrains" a responsible party from further violating RCRA. Neither remedy, however, is susceptible of the interpretation adopted by the Ninth Circuit, as neither contemplates the award of past cleanup costs, whether these are denominated "damages" or "equitable restitution."

***Meghrig*, 516 U.S. at 484**; *see also **Avondale Fed. Sav. Bank v. Amoco Oil Co., 170 F.3d 698 (7th Cir. 1999)*** (following ***Meghrig*** in denying an award of cleanup costs under **42 U.S.C. § 6972**).

The ***Meghrig*** decision is particularly important here because of the similarities between **U.S.C. § 6972(a)** and **42 U.S.C. § 6973(a)**. In pertinent part, in fact, these statutes are "nearly identical." ***Connecticut Coastal Fisherman's Ass'n v. Remington Arms Co., 989 F.2d 1305, 1315 (2d Cir. 1993)***. The differences are slight; while the former permits a private citizen to sue and the latter authorizes suits by the EPA Administrator, with respect to the language in which Defendant hopes to locate a right to payment — the "as may be necessary" wording — they are the same. *See* **42 U.S.C. §§ 6972(a), 6973(a)**. Each provides district courts with only two powers: the power to restrain a party from acting and the power to order a party to "take such other action as may be necessary." ***Id.*** Neither grants a court any other relevant authority. ***Id.***

Defendant, for its part, attempts to distinguish *Meghrig* by arguing that "a court's equitable powers are broader and more flexible when the public interest is at stake in a governmental enforcement action than when a private party sues." (Doc. 32, pp. 14-15 (citing **United States v. Lane-Labs USA, Inc.**, **427 F.3d 219 (3d Cir. 2005)**)). Setting aside the fact that the sole case Defendant cites on this point deals with two distinctly worded Federal Food, Drug and Cosmetic Act (FDCA), **21 U.S.C. § 301 et seq.**, statutes, the Court finds this argument foreclosed by the identical operative language in **42 U.S.C. §§ 6972(a)** and **6973(a)**. An "elemental canon" of statutory construction is that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." ***TAMA v. Lewis*, 444 U.S. 11, 19 (1979)**. By fashioning an otherwise-invisible distinction between **42 U.S.C. §§ 6972(a) and 6973(a)** and reading a right to pursue monetary damages into the latter, but not the former, the Court would be in grave danger of violating that principle.[6]

Therefore, for the reasons above the Court finds that *Meghrig*'s logic

---

[6] Defendant also argues that the Court must find that the government's right to obtain monetary damages under **42 U.S.C. § 6973(a)** exists unless the government "expressly disavows any right to sue for response costs under RCRA." (Doc. 32, p. 15.) Whether or not the government claims a right to sue for costs under **section 6973(a)** or any other RCRA provision, however, has no bearing on the meaning of the statute in question. That meaning is determined only by Congress — not the government — and must be faithfully interpreted by this Court. Thus, even though the government appears to have created an RCRA manual in which it takes the position that *Meghrig* should not extend to **section 6973(a)**, that fact is clearly not dispositive of any issue now before the Court.

should be extended to **42 U.S.C. § 6973(a)**. Consequently, the Court finds that **section 6973(a)** does not allow the government to seek pecuniary relief here, and thus that the injunction the government seeks could not have been discharged in earlier bankruptcy proceedings.[7]

### V. Conclusion

Thus the Court **GRANTS** the government's motion for partial summary judgment. (Doc. 18.) Pursuant to **28 U.S.C. § 2201**, the Court hereby **DECLARES** that the injunction sought by the government in its first cause of action could not have been discharged in the bankruptcy proceedings entered into by Defendant's predecessors.

**IT IS SO ORDERED**.

Signed this 6th day of July, 2006.

/s/      David   RHerndon
**United States District Judge**

---

[7] This finding — that **42 U.S.C. § 6973(a)** does not give rise to a suit for damages — naturally disposes of Defendant's suggestion that the government's action may be invalid because it consists of a repackaged claim for damages that could have been asserted in the original bankruptcy proceedings. (Doc. 32, p. 17.) *See **In re CMC Heartland Partners**, 966 F.2d 1143, 1146-47 **(7th Cir. 1992)***.