**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**APEX OIL COMPANY, INC.**

**Defendant.** **No. 05-CV-242-DRH**

**MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

## I. Introduction

Pending before the Court is the United States' motion to strike testimony of Eric L. Butler (Doc. 82) and the United States' motion for summary judgment (Doc. 65). For the reasons below, the Court denies both of the United States' motions. (Docs. 65, 82)

## II. Background

Defendant Apex Oil Company, Inc. ("Defendant") is a successor-by-merger to corporate entities — both named Clark Oil and Refining Corporation — that owned and operated a refinery and associated pipelines and sewers in Hartford, Illinois (the "refinery"). The United States alleges that there were multiple leaks of petroleum in the pipelines running from the refinery and that eventually the leaks resulted in contaminated groundwater and dangerous levels of vapor-phase hydrocarbons in the soil and the air. This subsurface hyrdocarbon contamination,

the United States alleges, may present an imminent and substantial endangerment to health or the environment and, therefore, injunctive relief pursuant to the Resource Conservation and Recovery Act ("RCRA"), **42 U.S.C. § 6973(a)** to abate the alleged endangerment, is appropriate. Defendant disagrees. Defendant disputes the degree of contamination and the potential endangerment any such contamination might pose to the public or the environment.

## III. Analysis

### A. United States' Motion to Strike Testimony of Eric L. Butler

The United States is seeking pursuant to **FEDERAL RULE OF EVIDENCE 702** to strike the declaration of Defendant's expert, Eric L. Butler, Ph.D., and to exclude from trial Dr. Butler's expert report and related testimony. The United States argues that the Court should bar Dr. Butler's testimony because Dr. Butler is not qualified to offer an opinion on topics such as toxicology and statistics and that his opinions are unreliable because the methodology he employs cannot be tested, has not been subjected to peer review, and is not generally accepted in the relevant scientific communities. Defendant counters that the United State's motion should be denied because it is not supported by an affidavit and that the claimed deficiencies go to weight and not admissibility. The Court agrees with Defendant.

The admissibility of expert testimony in federal court proceedings is governed by **FEDERAL RULE OF EVIDENCE 702.**[1] **RULE 702**, the codification of the

[1] **FEDERAL RULE OF EVIDENCE 702** provides:

> If scientific, technical, or other specialized knowledge will assist the trier of

Supreme Court's decision in ***Daubert***, requires the trial judge to perform a gatekeeping function with respect to expert testimony. ***Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).** The trial judge must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." ***Id.* at 589**. This inquiry is also required for technical and other specialized expert testimony. ***See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)**. The Seventh Circuit, interpreting ***Daubert***, has established that when evaluating the admissibility of the proffered testimony, district courts are to undertake a two-step inquiry:

> Daubert first "directs the district court to determine whether the expert's testimony pertains to scientific knowledge. This task requires that the district court consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.'" Second, the district court must "determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying."

***O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994) (quoting *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 613 (7th Cir. 1993)(citations omitted))**.

While the Supreme Court did "not presume to set out a definitive

---

fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

checklist or test," it did list several factors that should be considered including: (1) whether a scientific theory or technique has been or can be tested; (2) whether the scientific theory has been subjected to peer evaluation and publication; (3) the actual or potential error rate and existence of any standards controlling the technique's operation; and (4) whether the theory has been generally accepted in a particular field. ***Daubert*, 509 U.S. at 595**. The test of reliability, however, is flexible and there is no requirement that the district judge consider each one of the factors when making an admissibility ruling. ***Id.*; *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 535 (7th Cir. 2000)**.

When considering the reliability of proposed expert testimony, a court must also determine whether the expert is qualified in the relevant field and examine the methodologies the expert employed in reaching his or her conclusions. ***See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).** Furthermore, "a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." ***Id.***

The purpose of the rule in ***Daubert*** "was to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded of their professional work." ***Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir.), *cert. denied*, 519 U.S. 819 (1996)**. **FEDERAL RULE OF EVIDENCE 703** explicitly permits reliance on material "reasonably relied upon by

experts in the particular field forming opinions or inferences." **FED. R. EVID. 703**. "[Seventh Circuit] case law has recognized that experts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." ***Cooper v. Nelson*, 211 F.3d 1008, 1020 (7th Cir. 2000)**. An expert must be limited to opinion testimony in the area of expertise for which the proffering party can qualify the expert. ***Goodwin v. MTD Products, Inc.*, 232 F.3d 600 (7th Cir. 2000)**. Once qualified, an expert can testify to his or her area of expertise, regardless of whether the expert is prepared to offer an opinion as to the ultimate issue. ***Smith v. Ford Motor Company*, 215 F.3d 713 (7th Cir. 2000)**.

Dr. Butler's overall opinion, expressed as Opinion 1 of his Expert Report, is that the non-aqueous phase liquid hyrdocarbons ("NAPL") "on the groundwater table under Hartford Illinois is not causing odor problems in indoor air in Hartford, nor causing or contributing to (in any meaningful way) dangerous levels of hydrocarbon vapors in the shallow soil gas of Hartford." (Doc. 74, Ex. 2, Attachment A.) Opinions 3-8 of Dr. Butler's expert report support this overarching opinion.

The Court first finds that Dr. Butler's academic background in environmental chemistry, as well as his experience in forensic chemistry qualify him as an expert in this field. The Court believes that Dr. Butler is sufficiently qualified to speak to the issues contained in his Expert Report. Any further questions

regarding Dr. Butler's alleged inexperience in this area go to the weight that should be given Dr. Butler's testimony, not its admissibility.

Second, the Court finds that Dr. Butler's testimony is sufficiently reliable and relevant and may assist the trier of fact, in this case the Court, in understanding the evidence or determining a fact in issue, as required by **Rule 702.** All of Dr. Butler's proposed testimony relates to the facts at issue in the case. Dr. Butler employed methodologies that have been discussed in various scientific publications and are generally accepted within the scientific community. Dr. Butler's methodology is acceptable under the gatekeeping requirements of **Rule 702** and his testimony is admissible. The Court notes that any

> question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the [factfinder] to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based.

***Smith*, 215 F.3d at 719.**

Any attack by the Government as to the weight of Dr. Butler's testimony is a subject appropriate for cross examination. Accordingly, the Court **DENIES** the United States' motion to strike testimony of Eric. L. Butler (Doc. 82).

**B. United States' Motion for Summary Judgment**

**1. Summary Judgment Standard**

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; ***Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)** (citing ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment. ***Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)** (citing ***Celotex*, 477 U.S. at 323**). In reviewing a summary judgment motion, a court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)** (citing ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**).

**2. Finding a Violation Under RCRA**

RCRA "establishes a comprehensive federal 'cradle-to-grave' program regulating the generation, transportation, storage, treatment, and disposal of hazardous waste." ***United States v. Bethlehem Steel Corp.*, 38 F.3d 862, 862 (7th Cir. 1994)**. Unlike the Comprehensive Environmental Response, Compensation and Recovery Act ("CERCLA"), **42 U.S.C. § 9601 et seq.**, "RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who

have attended to the remediation of environmental hazards." ***Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)**. Instead, RCRA's primary purpose "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" ***Id.*** It accomplishes this via two provisions providing for litigation, one, **42 U.S.C. § 6973**, allowing for suits commenced by the Administrator of the Environmental Protection Agency ("EPA"), and another, **42 U.S.C. § 6972**, allowing for suits brought by private citizens.

Under either provision, the relevant party may sue to abate conduct which "may present an imminent and substantial endangerment to health or the environment." **42 U.S.C. §§ 6972(a), 6973(a)**. The United States argues that the use of the word "may" suggests that finding a violation under this provision of RCRA requires only a showing that there is the "potential" for an imminent threat of substantial harm. In addition, the United States maintains that an endangerment may be considered substantial even if is not measurable or quantifiable. Defendant, on the other hand, argues that the standard for finding an endangerment is much higher and therefore, by its very nature, requires a significant fact-intensive inquiry. Defendant cites to several cases to support its argument that proving endangerment is almost always a disputed fact, and, therefore, a finding of endangerment on summary judgment is inappropriate. ***See e.g. Acme Printing Ink Co. v. Menard,***

***Inc.*, 870 F. Supp. 1465, 1478-79 (E.D. Wis. 1994); *Citizens for a Better Environment v. Caterpillar, Inc.*, 30 F. Supp. 2d 1053 (C.D. Ill. 1998); *Potomac Riverkeeper, Inc. v. National Capital Sheet and Trap Club, Inc.*, 388 F. Supp. 2d 582, 588-89 (D. Md. 2005).** The United States persuasively and correctly counters that the cases cited by Defendant are all district court decisions in cases brought by private parties under RCRA's citizen suit provision. The United States further argues that "[p]rivate claims under RCRA § 7002(a)(1)(B) are limited by statute to locations where EPA has declined to take action and, therefore, generally involve less threatening sites. Thus, it is not surprising that evidence of 'endangerment' at such sites is less clear-cut – and summary judgment less frequent – in private RCRA § 7002 actions." (Doc. 81, p. 2.)

The Court tends to agree with the United States that the standard for finding an endangerment is lower than Defendant suggests. ***See, e.g. Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 259 (3rd Cir. 2005) (holding that "Congress must have intended that 'if an error is to be made in applying the endangerment standard, the error must be made in favor of protecting public health, welfare and the environment.'" (quoting *United States v. Conservation Chemical Co.*, 619 F. Supp. 162, 194 (W.D.Mo. 1985))).** Nevertheless, the Court believes that there are too many conflicting and disputed facts, some of which require credibility determinations, that preclude the Court from entering summary judgment in favor of the United States, particularly since all factual disputes must be resolved

in favor of the non-movant at the summary judgment stage.

Defendant disputes, for example, the degree of contamination and whether such contamination poses any threat to the public or the environment. (Doc. 72, p. 3-5.) These factual disputes are supported by declarations provided by Defendant's expert witnesses. Defendant also contests the methods employed by the United States in reaching the conclusion that the drinking water is contaminated. Moreover, Defendant disputes that the vapor intrusion cited in the Health Consultation is attributable to the hydrocarbon plume. In turn, the United States disagrees that these facts are in dispute. Given the nature of this case and the specialized knowledge that the facts entail, the Court is not in a position to make factual findings at this stage. Accordingly, the United States' motion for summary judgment (Doc. 65) is **DENIED**.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** the United States' motion to strike testimony of Eric L. Butler (Doc. 82) and also **DENIES** the United States' motion for summary judgment (Doc. 65).

**IT IS SO ORDERED**.

Signed this 15th day of March, 2007.

/s/ David RHerndon
**United States District Judge**