IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**APEX OIL COMPANY, INC.**

**Defendant.**                                              **No. 05-CV-242-DRH**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction

Pending before the Court is Defendant Apex Oil Company, Inc.'s ("Apex Oil") motion in limine to preclude and strike testimony and report of Theresa A. Gustafson. (Doc. 85.) For the reasons set forth below, the Court denies Apex Oil's motion. (Doc. 85.)

### II. Background

Defendant Apex Oil is a successor-by-merger to corporate entities — both named Clark Oil and Refining Corporation — that owned and operated a refinery and associated pipelines and sewers in Hartford, Illinois (the "refinery"). On April 5, 2005, the United States filed a complaint against Apex Oil alleging that there were multiple leaks of petroleum in the pipelines running from the refinery and that eventually the leaks resulted in contaminated groundwater and dangerous levels of vapor-phase hydrocarbons in the soil and the air. This subsurface hyrdocarbon

contamination, the United States alleged, may present an imminent and substantial endangerment to health or the environment and, therefore, injunctive relief pursuant to the Resource Conservation and Recovery Act ("RCRA"), **42 U.S.C. § 6973(a)** to abate the alleged endangerment, is appropriate. Defendant disagrees. Defendant disputes the degree of contamination and the potential endangerment any such contamination might pose to the public or the environment.

### III. Analysis

**A. United States' Motion in Limine to Preclude and Strike Testimony and Report of Theresa A. Gustafson (Doc. 85)**

The United States retained Theresa A. Gustafson to review and interpret documentation related to the Hartford Refinery's operation between 1967 and 1988 for the purpose of generating an opinion on the documented leaks that occurred as a result of Hartford Refinery's operations and to provide an estimate of the volume of petroleum that was leaked from the Refinery. The documents were limited, however, because the Government asserts that many of the original documents were destroyed by Apex in 1995. (Doc. 88, p. 10, fn. 6.) Ms. Gustafson attempted to 1) calculate the average daily losses and 2) determine what portion of the daily losses were due to leaks and spills.

Based on Ms. Gustafson's review of the documents, she concluded the following in her expert report:

1. Leaks from the Clark/Apex terminal and river pipelines during the October 1967-October 1988 time frame resulted in the release of

>    significant quantities of petroleum products underground beneath the Village of Hartford, Illinois.
>
> 2. External corrosion due to bare pipe, proximity of neighboring lines, and presence of acid gases played a significant role in causing or contributing to the releases.
>
> 3. The failure to properly isolate lines that had been abandoned in place resulted in two of the releases.
>
> 4. It is estimated that between approximately 720,000 and 1.4 millions gallons of petroleum products were released to the environment from the Clark/Apex refinery and pipelines each year during this time frame due to leaks. It is likely that the volume released would have been at the higher end of the estimated range during the earlier portion of the time frame of interest (prior to 1978) when the 10" terminal lines were still in use.

(Doc. 86, Ex. A, pp. 1-2.)

Apex Oil is seeking pursuant to **FEDERAL RULE OF EVIDENCE 702** to strike the testimony and report of Ms. Gustafson. Apex Oil asserts that the Court should strike Ms. Gustafson's testimony and report because Ms. Gustafson's methodologies do not comply with the requirements of **Rule 702** and her opinions amount to nothing more than "conjecture and speculation." (Doc. 86, p. 1.) The United States concedes that Ms. Gustafson relied on her "specialized professional expertise" and "experience" in reaching her conclusions and that her calculations can only provide a "rough estimate" of the volume of product loss. However, the United States maintains that specialized professional expertise, in this case, is a valid basis for Ms. Gustafson's opinions and that any issue regarding the reliability of Ms. Gustafson's testimony goes to the weight of her testimony and, therefore, her testimony should not be barred outright. The Court agrees with the United States.

The admissibility of expert testimony in federal court proceedings is governed by **FEDERAL RULE OF EVIDENCE 702.**[1] **RULE 702**, the codification of the Supreme Court's decision in ***Daubert***, requires the trial judge to perform a gatekeeping function with respect to expert testimony. ***Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).** The trial judge must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." ***Id.* at 589**. This inquiry is also required for technical and other specialized expert testimony. ***See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)**. The Seventh Circuit, interpreting ***Daubert***, has established that when evaluating the admissibility of the proffered testimony, district courts are to undertake a two-step inquiry:

> Daubert first "directs the district court to determine whether the expert's testimony pertains to scientific knowledge. This task requires that the district court consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.'" Second, the district court must "determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying."

***O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994)**

---

[1] **FEDERAL RULE OF EVIDENCE 702** provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(quoting *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 613 (7th Cir. 1993)(citations omitted)).

While the Supreme Court did "not presume to set out a definitive checklist or test," it did list several factors that should be considered including: (1) whether a scientific theory or technique has been or can be tested; (2) whether the scientific theory has been subjected to peer evaluation and publication; (3) the actual or potential error rate and existence of any standards controlling the technique's operation; and (4) whether the theory has been generally accepted in a particular field. *Daubert*, 509 U.S. at 595. The test of reliability, however, is flexible and there is no requirement that the district judge consider each one of the factors when making an admissibility ruling. *Id.*; *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 535 (7th Cir. 2000).

When considering the reliability of proposed expert testimony, a court must also determine whether the expert is qualified in the relevant field and examine the methodologies the expert employed in reaching his or her conclusions. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Furthermore, "a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Id.*

An expert must be limited to opinion testimony in the area of expertise for which the proffering party can qualify the expert. *Goodwin v. MTD Products,*

***Inc.*, 232 F.3d 600 (7th Cir. 2000)**. Once qualified, an expert can testify to his or her area of expertise, regardless of whether the expert is prepared to offer an opinion as to the ultimate issue. ***Smith v. Ford Motor Company*, 215 F.3d 713 (7th Cir. 2000)**.

Ms. Gustafson has a Masters of Science in chemistry from the University of Illinois in Chicago. She has worked in the petroleum industry in different capacities since 1988. Reviewing Ms. Gustafson's qualification, it appears that she has extensive experience in the area of measuring petroleum "losses" that occur due to pipeline leaks. Apex does not seem to question Ms. Gustafson's qualifications; instead the motion focuses on challenging the methods she employs in reaching her conclusions.

The Court finds that **Rule 702**, there is a scientific basis for Ms. Gustafson's opinions. Defendant seems to dismiss Ms. Gustafson's opinions as nothing more than "speculation" because she relied on her personal experience in reaching some of her conclusions. Although Ms. Gustafson may not have employed what is considered a more traditional scientific method in reaching her conclusions, her reliance on her specialized training and extensive experience in the area of petroleum leaks provides a sufficient basis for her to offer opinions on this subject. When experience is the basis for reaching a certain conclusion then "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the

facts." **Advisory Committee Notes to FED. R. EVID. 702**. Particularly in light of the fact that this is a bench trial, the Court does not believe it is necessary to exclude Ms. Gustafson's testimony at this point without further inquiry. As the Seventh Circuit has held:

> It is not that evidence may be less reliable during a bench trial; it is that the court's gatekeeping role is necessarily different. Where the gatekeeper and the factfinder are one and the same-that is, the judge-the need to make such decisions prior to hearing the testimony is lessened . . . . That is not to say that the scientific reliability requirement is lessened in such situations; the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

*In re Salem*, **465 F.3d 767, 776-777 (7th Cir. 2006)**.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Apex Oil's motion in limine to preclude and strike testimony and report of Theresa A. Gustafson. (Doc. 85.)

**IT IS SO ORDERED**.

Signed this 14th day of August, 2007.

/s/     David RHerndon
**United States District Judge**