IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**APEX OIL COMPANY, INC.**

**Defendant.**                                                  **No. 05-CV-242-DRH**

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

This matter comes before the Court on two pending matters: the United States' motion for protective order (Doc. 31) and Defendant Apex Oil Company, Inc.'s ("Apex") motion in limine to Preclude Admission of the July 1987 Clark Oil Refineries Technical Assessment Prepared by Arthur D. Little, Inc. (Doc. 93). For the following reasons, the Court grants the United States' motion for protective order (Doc. 31) and denies Apex Oil's motion in limine (Doc. 93).

### II. Analysis

**A. United States' Motion for Protective Order (Doc. 31)**

**1. Background**

On January 9, 2006 the United States filed a motion seeking a protective order relating to the Enforcement Addendum attached to a March 14, 2004 U.S. EPA memorandum entitled "Determination of Threat to Public Health or Welfare or the

1

Environment at the Hartford Area Hydrocarbon Plume Site in Hartford, Illinois in the County of Madison" ("Enforcement Memorandum"). (Doc. 31.)  The Enforcement Addendum was marked "ENFORCEMENT CONFIDENTIAL NOT SUBJECT TO DISCOVERY."  EPA attorney Brian Barwick authored the Enforcement Addendum. Mr. Barwick submitted a declaration in support of the motion for protective order (Doc. 31, Ex. 1.)  The declaration details the process of creating the Enforcement Addendum and the efforts Mr. Barwick made to ensure that the Enforcement Addendum was placed in the site privilege file, not the administrative record. However, according to the United States, despite Mr. Barwick's efforts, an administrative error occurred and the Enforcement Addendum was placed in the administrative record and later inadvertently provided to Apex in response to a discovery request.  As soon as the United States became aware of the disclosure of the Enforcement Addendum, it sent a letter to counsel for Apex requesting that the document be returned or destroyed. Apex declined to do so.

On December 23, 2005, Magistrate Judge Donald Wilkerson held a telephonic discovery dispute conference regarding this matter.  The issue was particularly pressing because of its impact on a pending motion for partial summary judgment.  Following the conference, the parties briefed the matter. (*See* Docs. 28 and 31.) However, the motion for partial summary judgment was ruled on before the motion for protective order was ever ruled on, rendering the issue moot, or so the Court believed.  The issue was raised again by the United States on May 24, 2007 at the final pre-trial conference.  The United States requested that the motion be ruled

upon, unless Apex was willing to voluntarily return the document. In August 2007, Apex informed the Court that it still believed that the document was not privileged and, therefore, requested that the Court rule upon the motion. The Court directed the parties to file supplemental briefs. (Doc. 100.) On August 29, 2007, the United States and Apex filed supplemental briefs. (Docs. 102 and 103.)

### 2. United States' Arguments

The United States asserts in its motion for protective order (Doc. 31) that the Enforcement Addendum is protected from disclosure by the attorney-client privilege and the work product protection and that its inadvertent disclosure of the Enforcement Addendum does not waive those protections. ***Citing United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983).*** The United States argues that the Court should apply a balancing test to determine whether the inadvertent disclosure of a protected document effects a waiver of the protections. Applying this test, the United States maintains that the Enforcement Addendum is privileged and that it did not waive that privilege when it inadvertently disclosed the document to Apex. In addition, the United States asserts that it has always acted in a way to protect the document's privilege.

### 3. Apex's Arguments

Apex denies that the Enforcement Addendum is entitled to any protections because 1) it alleges that the document was shared with third-parties, 2) with whom the joint-defense privilege does not apply, and 3) the Enforcement

Addendum is administrative and not legal. In its supplemental brief (Doc. 102), Apex maintains its previous arguments and asserts new arguments, which it says have emerged since the initial briefing. First, Apex argues that the United States has proceeded in such a way with respect to the Enforcement Addendum that its subsequent actions work to waive any privilege that might have existed. In addition, although Apex does not exactly endorse the balancing test, it acknowledges that the balancing test may be the standard governing whether an inadvertent disclosure waives a document's privilege. Apex argues that the balancing test factors also support a finding that the United States has waived the privilege.

### 4. Discussion

The Court undertakes a three-part inquiry to review Plaintiff's motion for protective order:

> As a threshold matter, the court must determine whether the disputed document is indeed [privileged]. If the document is not privileged, the inquiry ends. If the document is privileged, the court must then determine if the disclosure was inadvertent. Lastly, even if the document is found to be [privileged] and inadvertently produced, the court must, nonetheless, determine whether privilege was waived.

***Sanner v. Board of Trade of City of Chicago*, 181 F.R.D. 374, 379 (N.D.Ill. 1998) (*quoting Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 115 (N.D.Ill. 1996)).**

#### *a. Is the Enforcement Addendum privileged?*

Apex first argues that the Enforcement Addendum is not privileged because it is not legal in nature. Apex posits that "the Addendum does not have a

4

legal tone.  Not a single case is cited or discussed.  The Addendum contains no application of a single legal principal to any facts." (Doc. 28, p. 5.)  The Court finds no merit in this argument and Apex fails to cite a single case that would support its contention that a document must contain certain things (i.e., case citations) to be considered legal and hence to invoke the attorney-client privilege.  The document is clearly marked "ENFORCEMENT CONFIDENTIAL NOT SUBJECT TO DISCOVERY" and contains legal analysis regarding how to proceed against Apex.  Furthermore, Mr. Barwick, the EPA's attorney, wrote the Enforcement Addendum.  The Enforcement Addendum is clearly protected by attorney-client privilege.

In addition, Apex argues in its supplemental brief that the United States has waived any privilege that may have once existed because the United States has since failed to treat the document as privileged.  In its response (Doc. 103), the United States refutes, with supporting documentation, each argument set forth by Apex.  First, Apex argues that the United States attached the Enforcement Addendum as an exhibit to its motion for protective order, but failed to file it under seal.  The United States responds that, in fact, it coordinated with the Court to limit electronic access.  As it turns out, the motion and Enforcement Addendum were not sealed, due to an error on the Court's part, not on the part of the United States.[1]  Next, Apex

---

[1] The attachment is marked as sealed in the text of the docket entry and in an entry dated 1/10/06 intended for the Court only is the following staff notes: "pursuant to chambers request, attachment to document 31 has been sealed from public access, only court users and case participants can access and view this document."  Clearly the Court erred by not actually sealing the document.  This oversight has now been corrected.

argues that the United States failed "to object or otherwise raise any concerns when the Enforcement Addendum was marked and used as an exhibit during the deposition of Steven J. Faryan." (Doc. 102, Ex. 1, p. 3.) This is simply misleading. While it may be true that the United States did not object to the use of the Addendum during the deposition of Mr. Faryan, it did object to its use just over a week before during the deposition of Kevin Turner. The United States has provided the Court with a transcript of the discussion that transpired regarding the use of the Enforcement Addendum. To say that the United States did not object is not only quite disingenuous, but also exploits the cooperative spirit displayed by the United States during the deposition when it agreed to allow the Addendum in for a very limited purpose. There is certainly no waiver of privilege in that instance. Lastly, Apex argues that the United States failed to object when Apex openly discussed the document at issue in its response in opposition to Plaintiff's motion for summary judgment. The United States responds that Magistrate Judge Wilkerson had directed Apex to file the Addendum under seal (as it did) and to make the appropriate notation in the response (as it did). There was no reason for the United States to object. Therefore, this also does not constitute a waiver of the privilege.

Finally, Apex argues that regardless of whether the document was inadvertently disclosed, the Addendum is not privileged because the United States shared it with third parties who were not jointly involved in this litigation. The Court need not decide whether the "joint-defense privilege" or "common interest rule" applies in this case because Apex has failed to provide any conclusive evidence that

the Enforcement Addendum was in fact shared with third parties. In its initial brief, Apex states that "the Court should withhold its ruling until the relevant parties have been deposed." (Doc. 28, p. 3.) In its supplemental brief submitted over 18 months later, Apex is silent on the issue of whether the Addendum was shared with third parties. The Court interprets this silence as a concession on the part of Apex that it was unable to produce any evidence to support its original allegation that the document was shared.

### b. Was the document inadvertently disclosed?

Clearly the United States did not intend to disclose the Enforcement Addendum. Not only was the document marked "ENFORCEMENT CONFIDENTIAL NOT SUBJECT TO DISCOVERY," but the United States requested that the document be returned or destroyed immediately upon discovering that the document had been disclosed.

### c. Was the privilege waived by the inadvertent disclosure?

When determining whether an inadvertent disclosure waives a document's privilege, district courts have applied three different approaches: 1) any disclosure of a document waives the privilege; 2) unintentional disclosure cannot waive the privilege; and 3) the inadvertent disclosure must be examined by applying a balancing test to determine whether the disclosure affected a waiver. ***See Sanner v. Board of Trade of City of Chicago*, 181 F.R.D. 374, 379 (N.D.Ill. 1998).** Although the Seventh Circuit has not directly addressed what test should apply to

7

determine whether an inadvertent disclosure warrants a finding of waiver of privilege, it has indicated that it would reject an approach that always finds a waiver, while at the same time still recognizing that a privilege can be waived. ***Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997) (holding that "[c[ourts are somewhat less likely to find waiver in [a case of inadvertent disclosure]" but that "a privilege can be waived, and, once waived, is lost") *Id*. at 1126.** Based on this language and in the absence of additional guidance, this Court adopts a balancing test in this case, as is the trend among district courts in this Circuit. ***See Sanner*, 181 F.R.D. at 379 (collecting cases).** Other courts have considered the following factors under the balancing test: 1) the reasonableness of the precautions taken to prevent the disclosure, 2) the time taken to rectify the error, 3) the scope of the discovery, 4) the extent of the disclosure, and 5) the overriding issue of fairness. ***Id.*** The Court finds that these factors provide a reasonable framework for its inquiry.

Based on Mr. Barwick's declaration (Doc. 31, Ex. A), the Court finds that the EPA has a reasonable procedure in place to prevent this type of disclosure. Furthermore, it appears that Mr. Barwick took appropriate steps to ensure that the document was not placed in the administrative file. Despite these efforts, however, an error occurred. Nevertheless, the Court finds that reasonable precautions were taken.

In addition, upon learning that the document had been inadvertently disclosed, the United States responded the next business day by requesting that the

document be destroyed or returned.  Moreover, the Enforcement Addendum was a two-page document that was "part of a production that measured in the thousands of pages." (Doc. 31, p. 5.)  Lastly, the Court finds that there is no equitable interest that weighs against the return of the document.  All of these factors weigh in favor of a finding that the Unites States did not waive the privilege that the Enforcement Addendum was entitled to when it inadvertently disclosed the document to Apex.

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for protective order (Doc. 31) and **ORDERS** Apex to return all copies of the Enforcement Addendum immediately.

**B. Apex's Motion in Limine to Preclude Admission of the July 1987 Clark Oil Refineries Technical Assessment Prepared by Arthur D. Little, Inc.**

### 1. Background

Apex is seeking to exclude admission of a July 1987 Clark Oil Refineries Technical Assessment ("Report") prepared by Arthur D. Little, Inc. on behalf of Getty Petroleum Company ("Getty").  The Report was prepared at the request of Getty who was considering purchasing the Hartford, Illinois assets of Apex Oil.  Theresa A. Gustafson, one of Plaintiff's retained experts, relied, in part, on the Report and the data underlying the Report to form her opinions.

Apex argues in its motion that the Report is hearsay and, therefore, inadmissible pursuant to **FEDERAL RULE OF EVIDENCE 802**. (Doc. 94.)  The United States responds that Apex's motion is premature since the United States has not even attempted to introduce the document into evidence, but that in the event that it does

seek to move the Report into evidence that it is admissible pursuant to the ancient document exception to the hearsay rule. **FED. R. EVID. 803(16)**. (Doc. 98.) The Report was produced in July 1987 and the United States argues that if it seeks to offer the Report as evidence at trial in January 2008, the report will be over 20 years old. In its Reply brief, Apex argues that the Report is not trustworthy and has not been authenticated and should be excluded regardless of its age. (Doc. 99.)

### B. The Ancient Document Exception to the Hearsay Rule

Generally, hearsay statements are inadmissible as evidence. **FED. R. EVID. 802**. **FEDERAL RULE OF EVIDENCE 801(c)** defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, **FEDERAL RULE OF EVIDENCE 803** lays out certain classes of documents that "are not excluded by the hearsay rule, even though the declarant is available as a witness." **RULE 803(16)** provides that statements in "ancient documents," which are defined as statements in a "document in existence twenty years or more the authenticity of which is established," are one exception to the hearsay rule. **FEDERAL RULE OF EVIDENCE 901(a)** states that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Rule goes on to provide that specifically in regards to ancient documents or data:

> By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the

> requirements of this rule:. . . (8) . . .Evidence that a document or data compilation, in any form, (A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered.

**F**ED. **R.** E**VID.** **901(b)(8)**.

The fact that the Report will be 20 years old if and when it is offered at trial is not in dispute. In fact, Apex only raises the issue of authenticity in its Reply brief and even then it does not question that the Report is <u>the</u> Report. Instead, Apex asserts:

> The Getty Oil Report is nothing more than a hit piece designed and created to drive down the purchase price of the Clark Oil Refinery at a time Apex Oil was experiencing financial difficulties. The document is intrinsically untrustworthy and was not created to accurately record information, but, rather, was created to advance Getty Petroleum Company's attempt to purchase the Clark Oil Refineries at a depressed price.

(Doc. 99, p. 3.)

"Although the Rule requires that the document be free of suspicion, that suspicion goes not to the content of the document, but rather to whether the document is what it purports to be." ***United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir. 1986)**. There is no real question regarding the authenticity of the Report. Apex's counsel was present at Getty Realty Corp. headquarters when the original Report, which had been stored in "decaying storage boxes," was produced by Getty Realty. (Doc. 98, pp. 5-6.) Any questions regarding the substance of the Report go to the document's weight, not to the question of admissibility. ***Id.*** Accordingly, Apex's motion is

11

**DENIED**. (Doc. 93.)

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** the United States' motion for protective order (Doc. 31), **ORDERS** Apex to return all copies of the Enforcement Addendum, and **DENIES** Apex's motion in limine to preclude admission of the July 1987 Clark Oil Refineries Technical Assessment. (Doc. 93.)

**IT IS SO ORDERED**.

Signed this 21st day of December, 2007.

/s/      *David R Herndon*

**Chief Judge**
**United States District Court**